Councils you while you were sitting here so you know we're usually kind of open to letting you go but don't go forever but stick try to stick within the confines and then justice here has a response to one of the motions. All right, it's Mr. Zeeb and Ms. Frazier. There was a previous motion that we denied without prejudice to cite the Cesar case. The reason we obviously just denied it without prejudice, you may have a seat, is that that had been withdrawn as rule 23 and it was premature until an opinion had been filed in its place. With that opinion having been filed and the motion having been renewed and having all of us having read the decision, the motion to cite additional authority is granted. Be happy to discuss it with either or both of you. Proceed. Good morning, Your Honors. My name is Brett Zeeb from the State Appellate Defender's Office and I represent Mr. Alejandro Anguiano in this matter. I'll try not to take forever. Your Honors, it's patently unfair for a private counsel to take a client's money and then file a frivolous post-conviction petition. And that's precisely what happened to Mr. Anguiano in this case. So are we talking about an unfairness case or something based in actual authority under the law? That's a good question. Well, unfairness certainly underlies the whole thing. But we are arguing that counsel's performance was unreasonable. And as we argue in the brief, I believe you can find that under Rule 651C. And if not, apart from Rule 651C, based on the Act, based on case law, that there is an unreasonableness that can be found despite the fact that Mr. Anguiano's attorney was paid to file this brief. Limiting ourselves for a moment, which I think may be all it's worth, to 651C, you're really in effect asking us to undo 20 years of decisions that hold that it isn't applicable to a retained counsel, aren't you? Well, I don't know if I'd go that far, Your Honor, but I am mindful of the Supreme Court's decision in Richmond, which I think you're alluding to here. You're not suggesting we attempt to overrule the Supreme Court, are you? I'm not suggesting that, Your Honor, no. Then why don't we move past 651C? I would certainly like you to, but I'm not asking you to do that. But I do think there is some language in Richmond that's applicable and actually helpful to Mr. Anguiano's case. And if I can just, before we get there a bit, just to say a bit about what counsel actually did for Mr. Anguiano in this case. As you know, since you wrote the Rule 23 decision on the direct appeal, counsel represented Mr. Anguiano in the direct appeal, advanced an ineffective assistance argument based on this apparent detrapment defense that he alleged was there. This court categorically denied that claim, found it was unsupported, and then on post-conviction, counsel essentially took the same argument from direct appeal and then violated it. Counsel filed it as a post-conviction petition, added an affidavit, but nothing new or material that would support that. What was this? You can't make it up. Pardon me? What should have been there? What should he have done? What should he have added? What are the words you would have added specifically? Well, if it's a frivolous claim, you don't file it. So you're saying he shouldn't have represented... It's a frivolous appeal. The post-conviction petition that Mr. Anguiano's attorney actually filed for him, our position is it had no merit. It was already denied on direct appeal. And there was nothing added. What could have been raised that would have, in your judgment, been meritorious to aid the defendant? Well, different than what was filed. We don't know what other claims might exist for an initial post-conviction petition. We don't know what actually happened between post-conviction counsel and Mr. Anguiano before the filing of this petition. But that's not relevant. What's relevant is what specifically could he have filed that would be different that might have gotten him some relief or was adequate to meet the burden you're saying he didn't meet. Well, it's possible that there could be an affidavit from Anguiano that includes facts that were not apparent from the record as to the support and entrapment of the defense. From the defendant? From the defendant. That ain't going to fly. You've got us in a land of speculation. You're supporting... Wait, I don't want to go down that road. You're supporting my argument that he filed, that post-conviction counsel filed a frivolous petition and essentially burned Mr. Anguiano's one chance to file an initial petition. That's the prejudice here. Well, Mr. Zee, what troubles me is you've skipped a procedural stage that would allow us to analyze this. I mean, it's a very nice rhetorical move to get us to the alleged deficiencies in the post-conviction petition that counsel filed. But if we read 651C differently than you do and read the Supreme Court's decisions, plural, and many appellate court decisions as not holding 651C applicable to a retained counsel, then we're left with the issue that was decided adversely to your position this week by another panel of this court, which of course we read with interest but we're not bound to follow. And maybe before we do anything else, it would be useful to discuss why you think, if you do have a reason, that we should not follow that. Not follow Cesar? Right. Well, I think first and foremost, there's clear factual differences between the cases. In Cesar, the attorney actually filed a petition and did reasonable, competent work. In that case, the defendant initially drafted a petition pro se that contained one issue regarding tampering of evidence and kind of sat on it and then sent it to private counsel. Private counsel didn't just slap a cover on it and file it. He did more work. Isn't the broader ruling in Cesar, if that's the way it's pronounced, that really we shouldn't even be looking in a case of a retained counsel at whether reasonable assistance is provided, reasonable level of assistance is provided at the second stage? Isn't that one possible reading of what that other panel came up with? Sure, Your Honor. Should we follow it? If not, why not? You should not follow it because there are, I mean, 651C is just a subset. I mean, there's the Post-Conviction Hearing Act where courts had recognized this duty for reasonable assistance and then you've got 651C which delineates these three things that the record has to show that the attorney did. The attorney has to consult with the client. The attorney has to read the trial record and has to amend the petition. Not very, you know, those aren't very high standards. And there's no rule or court case that has stated specifically that 651C is the end-all, be-all for unreasonable assistance of counsel. Correct me if I'm wrong there, but just because counsel does those three things doesn't mean that he or she provided reasonable assistance. They might not respond to a motion dismiss. They might show up to the hearing on the motion to dismiss and speak nonsense or do nothing. I mean, clearly there's other ways for, I'm sorry, Your Honor. Cesar says that it's phrased, I think, in the language that the state is not required to guarantee the reasonable level of assistance of retained counsel on a post-conviction. Isn't that the language they use in essence? That is the language, but our position is we disagree with that. And can you give us examples of cases that have been decided in this state under the Post-Conviction Act that you would use to bolster your position? Well, I have two responses to that, Your Honor. One is if you look at the case People v. Bennett, a 2009 case from the 2nd District that the state cites and we cite in our reply. I mean, there it's a very similar situation to this case where the court expressed clear reservations about applying this Richmond rule. And in that case noted that the defendant there wasn't given a proper opportunity to complete an original petition. And that's the same situation that Mr. Anguiano is in. And there the court specifically noted that the defense did not raise an unreasonable assistance argument that was divorced from Rule 651C or independent of that. And I think it's pretty clear the Bennett court would have entertained that. Of course, we don't know what the Bennett court would have ruled, but at least they acknowledged that there are some cases where the unfairness is so palpable that there is this existence of other unreasonable behavior by an attorney that would be outside or not listed specifically in 651C. And then just looking at the Act as a whole, it doesn't make sense to have different standards for retained paid attorneys and appointed attorneys. I guess the assumption is if you pay for an attorney, you're going to get a damn good attorney. But that's not necessarily the case, and that's clearly reflected here where Mr. Anguiano, his family probably scraped together money it didn't have to pay this attorney, and then the attorney filed a frivolous petition. Well, you're saying it's frivolous. Well, so the state, the state. It was legitimate. And I might have bought into the Act if it had come before me. Well, the state in their motion to dismiss certainly thought that it was frivolous. They argued that res judicata clearly applied, and it was nothing more than the same thing that was filed on direct appeal. It was close, but two people can think differently on that same thing. Now, if two people can think differently, then it's not frivolous. And isn't the attachment of the affidavit at least a tacit understanding that without more, it would be held res judicata? And isn't that really to be read as an attempt to overcome a hurdle which is just, in this case, very difficult to overcome? I'd call it a feeble attempt. And if you look at what's actually attached, it does nothing more to support an entrapment defense. It's just more information regarding this uncle that was the one who, according to Mr. Anguiano, kind of pushed him to find buyers for the cocaine. But as you said in Rule 23, that doesn't go to entrapment. So there's nothing more that was added to this to support the claim or to get over res judicata. We still haven't heard anything this morning that would substantiate it either, to tell you the truth. I'm still waiting to hear something from you to indicate that this was really unfair because he could have said this or he could have done that. Well, I understand your position, Your Honor, and your concern. I'm hearing nothing. Well, there's nothing in the record. I can make something up. But the point is that the harm that we're pointing to is not that there's all this other great... You're saying the absence of anything is a positive result, one, or you don't feel what he filed was adequate. So therefore, he filed nothing. Essentially, our position, yes, is that he paid the counsel to represent him in a post-conviction matter and the counsel filed a frivolous petition, thereby foreclosing Mr. Anguiano's ability to then file an initial post-conviction that might have other claims. We don't know. Yes, it's speculation. There's nothing I can specifically point to because Mr. Anguiano's not here to tell me. Makeitup.com I don't know how you get this stuff, too. And I cite that in my brief. Makeitup.com Anything else? I understand what you're saying, Your Honor, but again, put yourself in Mr. Anguiano's position. If you're trying to ask us to undo precedent or you're trying to get us to disagree with another panel of this Court on a case that's on all fours, I just thought you'd have a little bit more ammo. Well, that would be unsupported by the record, though. I can't come in and say what other claims Mr. Anguiano has. That's outside the record. But what I can say is that it's unreasonable for an attorney to accept money and then file a post-conviction petition that was the same argument that he filed under Act 2. If there really is something out there that could be a second successive petition, don't we have an ability to review that at a certain time rather than guess that there might be something hidden in the haystack? Well, you're not guessing that something's hidden in the haystack. No, you can't even conceive of what it would be. Well, either way, the first way you suggest, I think, is inefficient. You're asking Mr. Anguiano to file an ARDC complaint against his attorney, file a malpractice... No, but if there is an investigation that reveals that there was actually something that could be said and wasn't brought up that would assert his actual innocence, there is a basis for bringing that before the court. He still has a remedy. Right, but then he's got to satisfy cause and prejudice and it's not an initial petition. It's a successive petition. Well, I think this is an attempt maybe to set that up. If you actually have something that, you know, you hear this all the time, wouldn't a cause asserted by a lawyer who actually found some evidence of actual innocence be that this lawyer filed this first petition in a way that you think was ineffective? Well, sure, but again, I don't think... But doesn't it really just send it back for second-stage proceedings in counsel? All right, I think we understand your position. Thank you. Well, Your Honors, thank you. Good morning, Your Honors. Assistant State's Attorney Joan Frazier on behalf of the people. Would you like to go into the argument or answer some questions that are burning in my mind right now? Go toward the fire. Yes, I think I would defer to the burning questions. Because despite the hard time and hard questions we've asked, Mr. Zeeb, I have some questions about not 651C but reasonable level of assistance. Certainly. Would you agree that the right to reasonable level of assistance is not grounded in 651C but based upon the Supreme Court initials their initial reading of the act and subsequent cases that have provided that standard? Well, in the Owens decision, the Supreme Court expressly stated that the right to reasonable assistance of counsel is founded on a combination of Section 122-4 and Rule 651C. So that was the Illinois Supreme Court's reading and that is the root of the right to reasonable assistance of counsel. Now, I was interested that neither side cited People v. Mitchell. Are you familiar with that case? I am not, Your Honor. It's found at 189 Illinois 2nd, 312. It's a Supreme Court decision from 2000. And interestingly, in that opinion, the Illinois Supreme Court first followed the line of cases starting with Owens holding that in that case where there is a retained counsel who filed the initial post-conviction petition that 651C did not apply. However, they also then conducted an analysis of whether the defendant's attorney provided a reasonable level of assistance. So it's hard for me to understand why they would do that in a case with a retained counsel if the limitations of 651C to appointed counsel also applied to the reasonable level of assistance. Can you enlighten me on that? Well, I'm not being familiar with the case. It's a little difficult. Let me put it this way. Long ago, the Illinois legislature decided that indigent defendants should have counsel to adequately shape their claims on post-conviction review. Rule 651C was enacted to ensure that at least a reasonable assistance of counsel is afforded to an indigent defendant and it sets forth three levels of competence. According to Pennsylvania v. Finley, the state doesn't have to provide collateral assistance at all. It can shape the post-conviction act the way that it wants to. And every other court, apparently except for Mitchell, including these more recent cases, have held that the legislature created a governmental obligation with a combination of Rule 651C and 122-4 that applies only to indigent defendants who have filed a petition that has gone to second stage or to defendants who filed a pro se petition and then hired counsel. The question is, the division is, who filed the initial petition? If it's retained counsel, there's an inference, and that's in Johnson, or a presumption, that the defendant has enjoyed basically the same level, whether you call it reasonable assistance, whether you call it competence under civil rules, that a defendant who then is appointed counsel gets. Well, Ms. Frazier, not so fast on no other cases. If you weren't familiar with Mitchell, are you familiar with Brown v. Mitchell 347 Illinois Appellate 3rd 1029 from 2004? Your Honor, I'm familiar with the cases that I cited and defendants cited. The rest of them, if the court would allow me to respond in writing later, I'll be glad to do so. I don't think that's necessary, but let me suggest that Brown, like Mitchell, has a situation where there was retained counsel and relying on Richmond, the court held that 651C did not apply, but then engaged in a separate analysis of reasonable level of assistance. My reading of those two cases, especially Mitchell, because it comes from our Supreme Court, you would have to read into that that they were engaged in a completely frivolous and irrelevant act in actually applying this type of analysis once they recognized that 651C didn't apply because it was a retained counsel. Now, another thing I'm troubled by, and I'd like to hear your reaction to that, is that 651C really does, as you referenced, talk about a situation where a person has filed a pro se petition and then counsel is appointed and then counsel is charged under 651C to put it in a proper form and to add any other claims which either have been prevented from that. Is that your reading of that? Well, actually, I think it's more narrow. I think what the cases have held is that appointed counsel... Proper form. Well, the proper form as to the constitutional claims the defendant has raised. Right. And then, at the second stage, that appointed counsel would be  if it's dismissed at second stage and is challenged, to have provided a reasonable level of assistance if it's an appointed counsel. Correct? If... I hate to say outside of the context of facts, but in general, I would say that if counsel has met the three requirements under Rule 651C that's considered, in those circumstances, reasonable assistance of counsel. Well, there is no reason at the second level, is there, to have a lawyer who's retained any differently than you would a lawyer who is appointed at the second stage? Yes. Because, again, if I'm understanding the question, the difference is that if the attorney has filed the petition I'm not sure I understand the question but if the attorney has filed the petition and it passes the second stage it's a different circumstances from a defendant who has filed a pro se petition and then counsel is appointed to assist him and you're saying, why would the two attorneys be judged differently? Right. Because, in one instance, you have someone who's shaping a pro se petition that may be insufficient and, again, the attorney in that case is looking narrowly or not narrowly, at the constitutional claims the defendant has raised. That's his burden, to shape those claims. On the other hand, if you have a defendant who had an attorney who filed the initial petition like in this case or in Cesar especially they raised, especially in Cesar counsel raised a host of claims so a defendant who has had an attorney prepare his initial petition starts out with a bit of an edge, you might say. Cesar seems to refer to it's interesting language because repeatedly in that decision our colleagues have said that the state has no obligation to assure a reasonable level of assistance. That's correct. Does the state have an obligation to assure effective assistance of counsel at trial? Certainly. Under the Constitution. So the state has to raise an objection to counsel who's doing an ineffective job? Well, the state would not object to Where is the state's obligation? What is it's obligation at the trial court level? The state. Well, it's the defense counsel obviously who has to provide effective assistance of counsel. Right, that's what I'm curious in the language and I thought maybe you could enlighten me. Well, I mean that's a constitutional obligation and there's no constitutional obligation here outside of arguably I wouldn't agree but they've raised equal protection. There's no constitutional obligation because the state doesn't have to afford Nobody's arguing a constitutional obligation. It's a statutory obligation which the Supreme Court read into the act. The act applying not only to petitioners who have appointed counsel but the act also applies to people who have retained counsel does it not? To a certain extent. I mean for example in this case in the Cesar case the court held that the defendant's claim was not recognizable because he was arguing reasonable assistance of counsel when he had retained counsel. So I mean yes there's an umbrella of the act but no it was not a recognizable claim. But the Supreme Court's going back to Owens has grounded their reading in the level of assistance required reasonable level of assistance to the act in conjunction with 651C correct? Well specifically section 122-4 as it applies to appointed counsel Where does it say that? 122-4 as applied to appointed counsel Because 122-4 only involves appointed counsel It's language that talks as the court knows talks about when an indigent is entitled to appointed counsel But then we get back to Mitchell where they apply that analysis to retained counsel Well I would argue that I would argue that in effect if I may back up there's two obligations at issue here. One is the governmental obligation which is created under rule 651C and 122-4 and one is a contractual obligation and that's what the recent cases have held in Cesar and Cagle and so on You have two obligations because we're talking about a defendant who is seeking collateral relief He doesn't have a presumption of innocence He So what the courts have found and again I would refer the court to Johnson is a defendant who has hired an attorney it's assumed that he has reasonably the same level of assistance as a defendant who has appointed counsel at second stage There's a weighing process. The two are considered to be essentially the same So if you retain counsel you're giving up the right to reasonable assistance at the second stage in your analysis You're not giving it up Your avenue of relief is different You can seek malpractice You can bring a professional So from the penitentiary you can ask for a cash reward Yes Your Honor This is not a cash reward but you can bring a disciplinary action This is collateral relief This is This is the whole issue about PC's They're limited They're not an open door with all the same rights That's why I think you're going down a door that has already been addressed unless the Supreme Court changes the PC rules Well We'll see whether my reading of Mitchell comports with yours at some other time Your Honor I would ask Lee to file a supplemental briefing on that subject if the court is going to apply a case that neither one of us decided and I apologize for that I'd be more than happy to submit a supplemental briefing if the court would like In the meantime I would argue that to the extent the court mentioned reasonable assistance of counsel what it was really looking at is competency of counsel and just to illustrate I would point out in Caesar the opinion that just came down yesterday It's quite clear the court says three different times that the state has no obligation to assure reasonable assistance of retained counsel And then I'm shooting myself in the foot here but in the end of the case the court says in accord with Cagle we find that the attorney has a duty to provide the petitioner with reasonable level assistance Well then the court goes on to say an attorney who fails to provide competent representation So the court used the phrase reasonable level assistance relying on McCoy and Cagle but then it's quite clear what the court means it's not reasonable assistance which is a term of art but competent counsel So Cagle is a first stage case Right? I'm sorry I have a lot of these cases in my mind No, it's a second stage case No, but it has to Go ahead It was a second stage case, Your Honor Where are we going? Cagle court ultimately rejected the claim holding that the statutory right to counsel doesn't attach at the first stage of proceedings because the attachment would result in disparate treatment of petitioners depending on whether they could afford counsel and this case we're talking about now does present a question of counsel performance at the second stage Isn't that true? Yes, and Cagle was a second case second stage case as well But they did in Cagle conduct a freestanding reasonable level of assistance analysis, didn't they? I would argue that they talked about competence and I can stand here and talk about competence too, but the fundamental point I'm trying to make is that the obligation, the government has carved out a very identifiable obligation in this case and these cases make quite clear it applies to counsel who has not had retained who's filed his pro se petition There's also a private obligation, the same obligation that occurs in any case between an attorney and his client So I think Cagle absolutely supports our position It says that the Sixth Amendment and 122-4 create governmental obligations and it defines a private obligation in contrast I think we can end this I think we're done We can talk to the other side now You don't have to I think you get the gist that your case has done This was extemporaneous addition So Counsel, if you have anything further to say We would ask that the Court affirm the dismissal of post-conviction petition And I wouldn't go too far because if he opens the door again he's going to hammer you Thank you for the warning, Your Honor I'll be extremely brief I would just like to encourage the Court to engage in a similar analysis that the Mitchell and the Brown courts did and find that Counsel's performance was unreasonable outside the parameters of 651C and to remand the matter to second stage for appointment of Counsel Thank you The briefs were good Both sides did the best they could with what they had and we'll let you know Thank you